UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:11-cv-22319-UU

LOUIS VUITTON MALLETIER, S.A.,
a foreign business entity,

      Plaintiff,

v.

WAN SAN SAN, PENG PENG, and DOES 1-10,

      Defendants.

_____/

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER AUTHORIZING
ALTERNATE SERVICE OF PROCESS ON DEFENDANTS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

Plaintiff submits this Memorandum of Points and Authorities in support of its *ex parte* application for an order authorizing alternate service of process on Defendants, brought pursuant to Federal Rule of Civil Procedure 4(f)(3) (the "*Ex Parte* Application").

## I.    INTRODUCTION

Plaintiff, Louis Vuitton Malletier, S.A. ("Plaintiff" or "Louis Vuitton") is suing Defendants Wan San San and Peng Peng (collectively the "Defendants") for trademark counterfeiting and infringement, false designation of origin, and cyberpiracy. As alleged in Louis Vuitton's Complaint, Defendants and various unknown associates are promoting, advertising, distributing, selling, and offering for sale counterfeit and infringing branded products bearing Louis Vuitton's trademarks within this Judicial District through various fully interactive commercial Internet websites operating under at least the domain names identified in Schedule "A" to Plaintiff's *Ex Parte* Application (collectively the "Subject Domain Names"), filed herewith.

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Louis Vuitton requests an order allowing service of process on Defendants via electronic mail ("e-mail"), pursuant to Federal Rule of Civil Procedure 4(f)(3). E-mail service is appropriate and necessary in this case, because Defendants (1) operate anonymously via the Internet using false physical address information in the registrations for their Subject Domain Names in order to conceal their location and avoid liability for their unlawful conduct; and (2) rely solely on electronic communications to operate their business. Notwithstanding Defendants' concealment of their physical location, Louis Vuitton still has the ability to contact Defendants directly and provide notice of Louis Vuitton's claims against them. Specifically, two of the contact e-mail addresses Defendants provided to their domain name registrars, as well as the customer service e-mail addresses Defendants use in conducting business via their websites operating under the Subject Domain Names, have been determined to be current and reliable means by which Defendants may be apprised of the pendency of this action. Louis Vuitton respectfully submits that an order allowing service of process, and all subsequent pleadings and discovery, via e-mail in this case will benefit all parties and the Court by ensuring Defendants receive immediate notice of the pendency of this action and allowing this action to move forward expeditiously. Absent the ability to serve Defendants by e-mail, Louis Vuitton will almost certainly be left without the ability to pursue a remedy.

## II.   STATEMENT OF FACTS

### A.   Defendants Are Engaged In Illegal Activities Within This District.

Defendants operate the Internet websites existing under the Subject Domain Names. Through their websites, Defendants are unlawfully advertising, offering for sale, and selling various counterfeit and infringing products bearing trademarks which are exact copies of Louis

Vuitton's registered trademarks identified in Paragraph 10 of the Complaint ("Defendants' Goods"). (See generally, true and correct copies of the relevant web pages from Defendants' Internet websites operating under the Subject Domain Names ["Defendants' Websites"] attached as Comp. Ex. A to the Declaration of Stephen M. Gaffigan in Support of Plaintiff's *Ex Parte* Application for Order Authorizing Alternate Service of Process ["Gaffigan Decl."], filed herewith.) Accordingly, Defendants' Websites are visibly advertising and offering for sale their counterfeit Goods within all Districts, including the Southern District of Florida. (Id.)

As part of its ongoing investigation regarding the sale of counterfeit branded products, Louis Vuitton retained Investigative Consultants, a licensed private investigative firm, to investigate the Defendants and their counterfeiting operation. (Declaration of Danilo Marquez in Support of Plaintiff's *Ex Parte* Application for Order Authorizing Alternate Service of Process ["Marquez Decl."] ¶ 3, filed herewith.) Danilo Marquez ("Marquez"), an employee of Investigative Consultants, accessed one of the Internet websites jointly operated by Defendants, louisvuittonoutletsale.net, and placed an order for the purchase of a Louis Vuitton branded bracelet, to be shipped directly to his address located in Miami, Florida. (Marquez Decl. ¶ 4 and Comp. Ex. A attached thereto.) In order to finalize his payment, Marquez was required to create an account with the louisvuittonoutletsale.net online store, and following the creation of his account, Marquez finalized payment for the Louis Vuitton branded bracelet via credit card. (Id.) Marquez's purchase was processed entirely online, which included providing shipping and billing information, payment, and confirmation of his order. (Id. at ¶ 4.) Following his purchase, Marquez corresponded via e-mail with Defendants using the customer service e-mail addresses sales_support@hotmail.com and Purse_store@yahoo.com regarding billing and payment information, and the shipment of his order. (Marquez Decl. ¶¶ 5-6 and Comp. Exs. B and C

attached thereto.) Thereafter, Marquez's firm received a package containing the Louis Vuitton branded bracelet he purchased via the louisvuittonoutletsale.net website, which was shipped directly to his address in Miami, Florida via Express Mail Service. (Id. at ¶ 8 and Comp. Ex. E attached thereto.) Following receipt, the detailed photographs and web page listings for the Louis Vuitton branded bracelet Marquez purchased via louisvuittonoutletsale.net were sent to Louis Vuitton for evaluation. (Id. at ¶ 9.)

      **B.    Defendants Have Purposefully Falsified Their Public Physical Address Data But Have Provided Valid E-mail Addresses.**

According to regulations established by the Internet Corporation for Assigned Names and Numbers ("ICANN"), an individual or entity which registers a domain name is required to provide complete and accurate registration information for the domain name. (See ICANN Uniform Domain Name Dispute Resolution Policy ¶ 2 attached as Ex. E to the Gaffigan Decl.) As demonstrated below, Defendants have ignored the applicable ICANN regulations and provided false physical address information to their domain name registrars in order to avoid liability for their criminal conduct. However, out of necessity, Defendants have provided accurate contact e-mail addresses to their domain name registrars for at least three of the Subject Domain Names, and have directly provided Plaintiff's investigator with accurate contact e-mail addresses while conducting business via their websites operating under the Subject Domain Names. As a practical matter, Defendants generally must maintain accurate e-mail addresses where their registrars may communicate with them regarding issues related to the purchase, transfer, and maintenance of their domain name accounts. Furthermore, it is necessary for merchants, such as Defendants, who operate entirely online, to provide customers with accurate e-mail addresses by which customers can contact the merchants to ask questions about the

4

merchants' products, place orders from the merchants' Internet websites, and receive information from the merchants regarding the shipment of an order.

Plaintiff's counsel obtained the available WHOIS domain registration data for each of the Subject Domain Names identifying the contact information Defendants provided their registrars. (Gaffigan Decl. ¶ 3 and Comp. Ex. B attached thereto, WHOIS domain registration records for the Subject Domain Names.) The relevant WHOIS domain registration records identify the Registrant and contact information as set forth in Paragraph 3 of the Declaration of Stephen M. Gaffigan.

Plaintiff's counsel requested Huang Yu Ting ("Ting"), a researcher in China, verify the accuracy of the physical addresses and telephone numbers provided and research alternative addresses for Defendants. (Declaration of Huang Yu Ting in Support of Plaintiff's *Ex Parte* Application for Order Authorizing Alternate Service of Process ["Ting Decl."] ¶ 4, filed herewith.) Ting investigated all of the physical contact addresses provided by Defendants in connection with the WHOIS domain registrations for the Subject Domain Names, and determined each address to be false, incomplete, and/or invalid for service of process on Defendants. (See Ting Decl. ¶ 4 and Exhibit A attached thereto, outlining Ting's investigation and the specific basis for her determination that each of the physical contact addresses are false, incomplete, and/or invalid for service of process on Defendants.) Ting also attempted to contact Defendants via the telephone numbers provided in the contact section of the WHOIS domain registration reports for the Subject Domain Names. (Ting Decl. ¶ 4.) However, Ting's attempts were unsuccessful as most of the telephone numbers are invalid, and the calls to the remaining valid telephone numbers either went unanswered or were determined to be unassociated with Defendants or any of the Subject Domain Names. (See Ting Decl. ¶ 4, and Ex. A thereto,

5

outlining Ting's investigation of the telephone numbers provided in the contact section of the WHOIS domain registration reports regarding the Subject Domain Names.)

The evidence makes it abundantly clear that Defendants intentionally falsified their physical address data in violation of ICANN's rules. Moreover, after conducting diligent investigations, neither Ting nor Marquez were able to identify valid physical addresses for service of process on Defendants. (Ting Decl. ¶ 5; Marquez ¶ 12.) Thus, based on Defendants' provision of invalid postal addresses and Louis Vuitton's inability to find another physical address for them, Louis Vuitton cannot serve Defendants by traditional means.

Despite falsifying their physical contact address data, Defendants provided accurate contact e-mail addresses to their domain name registrars for at least three of the Subject Domain Names, have directly provided Plaintiff's investigator with accurate contact e-mail addresses while conducting business via their websites operating under the Subject Domain Names. On June 27, 2011, Marquez sent pretextual e-mails to Defendants via their WHOIS contact e-mail addresses. (Marquez Decl. ¶ 11 and Comp. Ex. F attached thereto. See WHOIS domain registration reports regarding the Subject Domain Names attached as Comp. Ex. B to the Gaffigan Decl.) The e-mails sent to mrguang80@yahoo.com and shengli00@gmail.com were not bounced back nor returned as "undeliverable," thereby demonstrating the e-mails were delivered and the e-mail addresses are valid and operational.[1] (Id.) See Chanel, Inc. v. Zhixian, 2010 WL 1740695, at *3 (S.D. Fla. April 29, 2010) (finding that e-mails sent to e-mail addresses supplied by Defendant to his domain name registrars that did not bounce back presumptively

---

[1] Marquez also sent pretextual e-mails to Defendants via erteer@yahoo.com, sert@yahoo.com, wansan019@yahoo.com, and sertw@yahoo.com, and welentercom@hotmail.com, the contact e-mail addresses provided in the contact section of the WHOIS registration records for the remainder of the Subject Domain Names; however, his pretextual e-mail messages to the aforementioned e-mail addresses were not delivered successfully as these e-mail addresses are invalid and non-operational.

6

reached Defendant). Additionally, while completing the purchase of the counterfeit Louis Vuitton branded bracelet via the louisvuittonoutletsale.net website, Marquez exchanged e-mail messages directly with Defendants via their customer service e-mail addresses sales_support@hotmail.com and Purse_store@yahoo.com. (Marquez Decl. ¶¶ 5-6 and Exs. B and C attached thereto.) Hence, sales_support@hotmail.com and Purse_store@yahoo.com are also clearly reliable means of communicating with Defendants.

### C. Defendants Rely Solely on Electronic Communications.

Defendants have structured their website businesses so that the sole means for customers to purchase the Defendants' counterfeit goods at issue is by placing an order over the Internet. Defendants take and confirm orders solely through their websites, and they answer inquiries and provide shipping notices only via e-mail. (See generally, Marquez Decl. ¶¶ 5-6 and Comp. Exs. B and C attached thereto.) Furthermore, Defendants instruct customers to contact them via e-mail with any questions or concerns. (Id. See, e.g., p. 39 of Comp. Ex. A to the Gaffigan Decl.) Indeed, during Marquez's covert purchase of the Louis Vuitton branded bracelet using louisvuittonoutletsale.net, he was expressly instructed by Defendants to contact them via e-mail with any questions or concerns. (See, e.g., Comp. Ex. B to the Marquez Decl.) Marquez's purchase was processed entirely online, which included providing shipping and billing information, payment, and confirmation of his order. (Id.) As detailed above, Marquez was able to communicate directly with Defendants only electronically in connection with his purchase of the Louis Vuitton branded bracelet via louisvuittonoutletsale.net. (Marquez Decl. ¶¶ 5-6 and Comp. Exs. B and C attached thereto.)

### III. ARGUMENT

Pursuant to Federal Rule of Civil Procedure 4(f)(3), a district court may order an alternate method for service to be effected upon a foreign defendant, provided that it is not prohibited by

7

international agreement and is reasonably calculated to give notice to the defendant. In the instant matter, alternate service of process via e-mail is appropriate given that Defendants have established extensive Internet-based businesses by which they rely solely on electronic communications for its operation and because of the Defendants' decision to conceal their physical location. Accordingly, this Court should permit service by e-mail on Defendants.

      A.    **The Court May Authorize Service via Electronic Mail Pursuant to Federal Rule of Civil Procedure 4(f)(3).**

Federal Rule of Civil Procedure 4(f)(3) allows alternative methods for service of process, so long as those methods are not prohibited by international agreement and are directed by the Court. See Prewitt Enters., Inc. v. The Org. of Petrol. Exporting Countries, 353 F.3d 916, 923 (11th Cir. 2003). See also Brookshire Bros., Ltd. v. Chiquita Brands Int'l, Case No. 05-CIV-21962, 2007 WL 1577771, at *2 (S.D. Fla. 2007); Rio Props. Inc., v. Rio Int'l Interlink, 284 F.3d 1007, 1014 (9th Cir. 2002). The plain language of Rule 4(f)(3) reflects that the decision to issue an order allowing an alternate means of service lies within the sole discretion of the District Court. Prewitt Enters., Inc., 353 F.3d at 921; Rio Props., 284 F.3d at 1116. See, e.g., Brookshire Bros., Ltd., 2007 WL 1577771, at *2 (noting that "district courts have broad discretion under Rule 4(f)(3) to authorize other methods of service"); In re Int'l Telemedia Assocs., 245 B.R. 713, 720 (N.D. Ga. 2000) (noting that Rule 4(f)(3) is designed to allow courts discretion and broad flexibility to tailor the methods of service for a particular case).

Rule 4 does not require a party attempt service of process by those methods enumerated under subsections (f)(1) and (f)(2), including by diplomatic channels and letters rogatory, before petitioning the court for alternative relief under subsection 4(f)(3). Rio Props., 284 F.3d at 1114-15. See also Brookshire Bros., Ltd., 2007 WL 1577771, at *1 (S.D. Fla. 2007). In Brookshire,

the Honorable Judge Marcia G. Cooke allowed substitute service on a party's attorney pursuant to Rule 4(f)(3) holding as follows:

> Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f) and each subsection is separated from the one previous merely by the simple conjunction 'or.' Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates the primacy, and certainly Rule 4(f)(3) indicates no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

Brookshire Bros., Ltd., 2007 WL 1577771, at *1 (quoting Rio Props., 284 F.3d at 1015). Judge Cooke further held, "[t]he invocation of Rule 4(f)(3), therefore, is neither a last resort nor extraordinary relief." Id. at *2.

Additionally, the Constitution itself does not mandate that service be effected in any particular way. Rather, Constitutional due process considerations require only that the method of service selected be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Brookshire Bros., Ltd., 2007 WL 1577771, at *1 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). See also Rio Props., 284 F.3d at 1016. Accordingly, federal courts have allowed a variety of alternative service methods, including service by e-mail, where a plaintiff demonstrates the likelihood that the proposed alternative method of service will notify a defendant of the pendency of the action. See, e.g., Rio Props., 284 F.3d at 1017 (holding, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable"); In re Int'l Telemedia Assocs., 245 B.R. at 721 ("If any methods of communication can be reasonable calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them.").

Here, service on Defendants by e-mail will satisfy due process by apprising them of the action and giving them the opportunity to answer Louis Vuitton's claims.  As set forth in the Declaration of Huang Yu Ting, Defendants have secreted their physical location in a manner that violates the terms of their ICANN domain registration agreement and prohibits Louis Vuitton from physically serving process on them.  Indeed, Louis Vuitton has recently verified that Defendants' e-mail addresses are operational and are the most reliable means of communicating with them, and consequently, are the most reliable means of providing Defendants with notice of this action.  (See Marquez Decl. ¶¶ 5-6, 11 and Comp. Exs. B, C, and F attached thereto.)

E-mail service on an online business defendant is appropriate and constitutionally acceptable in a case such as this when the plaintiff is unable to personally serve the defendant at a physical address and has proven that e-mail is the most effective means of providing the defendant notice of the action. See Rio Properties, 284 F.3d at 1017 (concluding "not only that service of process by e-mail was proper—that is, reasonably calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to respond—but in this case, it was the method of service most likely to reach [the defendant]."). See also Popular Enters., LLC v. Webcom Media Group, Inc., 225 F.R.D. 560, 562 (E.D. Tenn. 2004) ("Under the facts and circumstances presented here, Rule 4(f)(3) clearly authorizes the court to direct service upon defendant by e-mail.  The rule is expressly designed to provide courts with broad flexibility in tailoring methods of service to meet the needs of particularly difficult cases.  Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts) (citation omitted).  The Rio Properties and Popular Enterprises courts each determined e-mail service to be appropriate in part because, as in this case, the

10

defendants conducted their business over the Internet, used e-mail regularly in their business, and encouraged parties to contact them via e-mail.  See id.

Likewise, in cases that are factually similar to this one, a number of Courts have held that alternate forms of service pursuant to Rule 4(f)(3), such as e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw."  See Popular Enters., LLC, 225 F.R.D. at 563 (finding that service of process by e-mail was reasonably calculated to apprise defendant of the action and give it an opportunity to respond); Chanel, Inc. v. Zhixian, No. 10-CV-60585, 2010 WL 1740695, at *3 (S.D. Fla. April 29, 2010) (e-mail service "reasonably calculated to notify Defendants of the pendency of this action and provide him with an opportunity to present objections."); In re Int'l Telemedia Associates, 245 B.R. at 722 ("A defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules.  Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party." (concluding e-mail and facsimile service to be appropriate)); Chanel, Inc. v. Zhibing, No. 2:09-cv-02835, 2010 WL 1009981, 4 (W.D. Tenn. March 17, 2010) (stating that e-mail service has the "greatest likelihood" of reaching e-commerce merchants and noting, "The federal judiciary's own CM/ECF system alerts parties . . . by e-mail messages."  Alternate service via e-mail granted).[2]  Plaintiff submits that allowing e-mail service in the present case is appropriate and comports with constitutional notions of due process, particularly given Defendants' decision to conduct their illegal Internet-based businesses anonymously.

---

[2] See also Marc Jacobs Trademarks, LLC v. Lin, Case No. 0:11-cv-60854-UU (S.D. Fla. April 26, 2011) (Order allowing e-mail service); Chanel, Inc. v. Liu, Case No. 0:10-cv-61972-UU (S.D. Fla. Jan. 7, 2011) (Order allowing e-mail service); Chanel, Inc. v. Wu, Case No. 0:10-cv-62546-UU (S.D. Fla. Dec. 30, 2010) (same); and Bottega Veneta International, S.A.R.L., v. Hua, Case No. 0:10-cv-62335-UU (S.D. Fla. Dec. 21, 2010) (same).

### B.     E-mail Service Is Not Prohibited by International Agreement.

As noted above, prior to filing this Application, Louis Vuitton diligently investigated Defendants' addresses and attempted to ascertain a valid address for service of process on Defendants, without success. (Ting Decl. ¶ 4 and Ex. A attached thereto; Marquez Decl. ¶ 11.) Thus, as a result of the Defendants' own effort to conceal their location, Louis Vuitton is unable to determine their physical whereabouts. (Id.) However, Louis Vuitton has good cause to suspect Defendants are residents of China. Specifically, the Louis Vuitton branded bracelet Marquez purchased from Defendants via their louisvuittonoutletsale.net website was shipped from China. (See Marquez Decl. ¶¶ 7-8 and Comp. Exs. D and E attached thereto, tracking report identifying the origin of shipping as China and outside packaging identifying the origin of shipping as China.) Indeed, while communicating electronically with Defendants regarding his purchase of the Louis Vuitton branded bracelet from louisvuittonoutletsale.net, Marquez traced both of Defendants' customer service e-mail addresses to a location in China. (See Marquez Decl. ¶¶ 5-6 and Comp. Exs. B and C attached thereto, tracing reports identifying the locations as China.) Moreover, all of the physical addresses Defendants provided to their WHOIS registrars are purportedly located in China. (See Gaffigan Decl. ¶ 3 and Comp. Ex. B thereto.)

The United States and the People's Republic of China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Hague Service Convention"). (Gaffigan Decl. ¶ 4 and Comp. Ex. C attached thereto, Hague Service Convention and list of signatory Members.)[3]   "[C]ompliance

---

[3] See also Hague Service Convention, November 15, 1965, 20 U.S.T. 361, available at http://www.hcch.net/index_en.php?act=conventions.text&cid=17 (last visited April 18, 2011) (full text of the Hague Service Convention); http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited April 18, 2011) (Status Table: listing the current contracting states).)

12

with the Convention is mandatory in all cases to which it applies . . . ." Volkswagonwerk AG v. Schlunk, 486 U.S. 694, 705, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988). However, according to Article 1 of the Hague Service Convention, "[t]his convention shall not apply where the address of the person to be served with the document is not known." Chanel, Inc. v. Zhixian, No. 10-CV-60585, 2010 WL 1740695, at *3 (S.D. Fla. April 29, 2010) (citing Hague Service Convention, art. 1). See also BP Products North America, Inc. v. Dagra, 236 F.R.D. 270, 271 (E.D. Va. 2006) (Hague Service Convention "shall not apply where the address of the person to be served with the document is not known"); Popular Enters., LLC, 225 F.R.D. at 562 (same). As the addresses of Defendants are unknown, Louis Vuitton respectfully submits that the Convention does not apply in this case.

Moreover, though it does not expressly authorize e-mail service, the Hague Convention does not preclude e-mail service, and thus, is no bar to court-directed e-mail service under Rule 4(f)(3). In fact, U.S. Courts have routinely authorized international mail and e-mail service notwithstanding the applicability of the Hague Convention. See, e.g., Brockmeyer v. May, 383 F.3d 798, 800 (9th Cir. 2004) ("We join the Second Circuit in concluding that the Convention ... does not prohibit service of process by international mail"); MPS IP Services Corp. v. Modis Communications, Inc., 2007 WL 723841 (Hague Convention, which Canada is a signatory, did not prohibit e-mail service upon Canadian defendants); Popular Enters., LLC, 225 F.R.D. at 562.

    **C.**    **E-mail Service Is Not Prohibited by International Law.**

The issuance of the requested service order pursuant to Rule 4(f)(3) is not contrary to or likely to offend the law of the People's Republic of China. (Gaffigan Decl. ¶ 5.) The law of the People's Republic of China does not appear to prohibit the service of process by e-mail and allows for alternate service means in certain circumstances. (Gaffigan Decl. ¶ 5 and Ex. D

attached thereto, "Civil Procedure Law of the People's Republic of China".)  For example, Article 80 of the law specifically provides that "[i]f direct service of a litigation document proves difficult . . . it may be served by post . . . ."  (Id.)  Additionally, Article 84 of the Civil Procedure Law of the People's Republic of China provides that "[i]f the whereabouts of a recipient ... is unknown ... the document shall be served by public announcement.". Chanel, Inc. v. Zhixian, No. 10-CV-60585, 2010 WL 1740695, at *2 n. 2 (S.D. Fla. April 29, 2010).  Hence, Louis Vuitton submits that allowing service of process upon Defendants in this case via e-mail would be consistent with and not prohibited by the Civil Procedure Law of the People's Republic of China.  See Chanel, Inc. v. Zhixian, No. 10-CV-60585, 2010 WL 1740695, at *2 n.2 (S.D. Fla. April 29, 2010) ("Service by e-mail would not appear to conflict with [Article 84 of the Civil Procedure Law of the People's Republic of China], and it is questionable whether service effected under Rule 4(f)(3) must always align with the methods authorized in the foreign country where service will take place") (citing Rio Props., 284 F.3d at 1015 n.5 (noting that the rule prohibiting a service method that would violate the foreign state's laws applies only to service effected under Rule 4(f)(2)).)

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant the present motion to serve the Summonses, the Complaint, and all subsequent pleadings and discovery upon each Defendant at the e-mail addresses sales_support@hotmail.com,

14

Purse_store@yahoo.com, mrguang80@yahoo.com, and shengli00@gmail.com.

DATED: July 25, 2011.               Respectfully submitted,

                                    STEPHEN M. GAFFIGAN, P.A.

                                    By:      s:/smgaffigan/
                                        Stephen M. Gaffigan (Fla. Bar No. 025844)
                                        Virgilio Gigante (Fla. Bar No. 082635)
                                        401 East Las Olas Blvd., #130-453
                                        Ft. Lauderdale, Florida 33301
                                        Telephone: (954) 767-4819
                                        Facsimile: (954) 767-4821
                                        E-mail: stephen@smgpa.net
                                        E-mail: leo@smgpa.net

                                    Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

15